IN THE COURT OF CRIMINAL APPEALS OF TENNESSEE
AT NASHVILLE
February 11, 2003 Session

## STATE OF TENNESSEE v. DONNIE THOMPSON

**Direct Appeal from the Circuit Court for Maury County**
**No. 12065      Jim T. Hamilton, Judge**

---

**No. M2002-01499-CCA-R3-CD - Filed March 3, 2003**

---

A Maury County jury convicted the defendant, Donnie Thompson, of voluntary manslaughter and attempted voluntary manslaughter. The trial court sentenced him as a Range I standard offender to the maximum sentences of six years for voluntary manslaughter and four years for attempted voluntary manslaughter, with the sentences to run consecutively. On appeal, the defendant contends his sentences are excessive. We reduce the sentence for voluntary manslaughter to five years, affirm the four-year sentence for attempted voluntary manslaughter, and order the sentences to run concurrently.

**Tenn. R. App. P. 3 Appeal as of Right; Judgments of the Circuit Court**
**Affirmed in Part; Modified in Part; Remanded**

JOE G. RILEY, J., delivered the opinion of the court, in which JOSEPH M. TIPTON and THOMAS T. WOODALL, JJ., joined.

John S. Colley, III, Columbia, Tennessee, for the appellant, Donnie Thompson.

Paul G. Summers, Attorney General and Reporter; Elizabeth B. Marney, Assistant Attorney General; Mike Bottoms, District Attorney General; and Robert C. Sanders and Lawrence R. Nickell, Jr., Assistant District Attorneys General, for the appellee, State of Tennessee.

## OPINION

Although sufficiency of the evidence is not an issue on appeal, we will relate certain facts as presented at trial in order to place the sentencing issue in proper perspective. On October 4, 2000, the defendant shot and killed Sherri Hodge, who was four feet and eleven inches tall and weighed eighty-eight pounds. He then shot her boyfriend, Tommy Keith Chapman, in the shoulder and in the head, and as a result, Chapman suffered permanent brain damage.

Approximately one week prior to the shootings, the defendant, the owner of a trailer park, ordered Hodge, a tenant, to move out of a trailer, which she had been renting from him. On October 4th, the defendant, Tony Crowe, and Jason Cummins were at the trailer replacing the front door and

its frame. While they were repairing the door, Hodge and Chapman arrived in her vehicle. Hodge entered the trailer, cursed the defendant, and walked to the back of the trailer while the defendant, Crowe, and Cummins remained in the living room. Hodge returned to the living room holding a curtain rod and asked the defendant where her remaining possessions were. When the defendant told her that he and Crowe had bagged the items and placed them on the front porch of another trailer, Hodge cursed at the defendant and poked him with the curtain rod. The defendant continued to repair the front door, and Hodge returned to the back of the trailer.

Chapman then left the vehicle and entered the trailer, where both Chapman and Hodge cursed the defendant. The defendant told them to leave, but they continued to curse him. The defendant then walked to his vehicle and returned with a pistol. Crowe testified the defendant stood to the left of the front door, placed the gun by his side, and told Chapman and Hodge to leave; however, they continued to curse the defendant.

Crowe testified that when the defendant returned with the pistol, Crowe approached the defendant and told him, "Don't mess up," and the defendant told Crowe to move out of the way and "watch it." Crowe stated Hodge and Chapman began advancing toward the defendant from opposite directions, and that Chapman threatened the defendant. The defendant then shot Hodge, who had been holding a curtain rod. Crowe stated Hodge walked out of the door, down the steps, and to the front of her vehicle where she collapsed.

Crowe testified the defendant then fired two shots at Chapman, who was reaching for a hammer after the defendant shot Hodge. Crowe stated he never saw anything in Chapman's hands. Chapman fell on the floor, and the defendant exited the trailer. Crowe called 911, and the defendant placed the gun inside his vehicle and waited for the police to arrive.

The defendant testified he evicted Hodge due to complaints he received from other tenants. He stated that on October 4th, he, Crowe, and Cummins cleaned the trailer and began to repair the door. During the afternoon, Hodge and Chapman drove up in her vehicle. The defendant stated Hodge left her vehicle and immediately began cursing him while he continued to work. Hodge shoved the defendant, entered the trailer, and continued to curse him. The defendant stated Hodge had a curtain rod and poked him with it.

The defendant testified Chapman then entered the trailer and threatened him. The defendant testified he went to his vehicle "to prevent a fight" and retrieved his gun intending to scare them into leaving. The defendant stated he reentered the trailer and placed the gun by his side. Crowe approached the defendant and said, "Don't mess up;" however, the defendant stated he shoved Crowe out of the way because Hodge and Chapman were coming toward them. According to the defendant, as they approached him, he held the gun up; Hodge went for the gun; and he shot her. He stated she did not possess a weapon and thought she threw the curtain rod on the ground when she was going for the gun. After he shot Hodge, she ran out of the trailer.

The defendant testified that after he shot Hodge, Chapman moved toward him at a faster rate, and he shot Chapman in his shoulder. The defendant stated Chapman continued to come at him, so he shot him in the head. The defendant further testified he thought he saw something in Chapman's

hand, but he was uncertain as to whether the object was a knife. An officer subsequently found an open pocket knife on the floor under Chapman.

The jury rejected the defendant's claim of self-defense and found him guilty of voluntary manslaughter and attempted voluntary manslaughter. The trial court imposed consecutive sentences of six years for the voluntary manslaughter conviction and four years for the attempted voluntary manslaughter conviction.

## SENTENCING HEARING

The presentence report admitted at the sentencing hearing revealed that the fifty-six-year-old defendant has been married to his present wife for approximately thirty-three years, and they have two grown children. For many years the defendant has been self-employed as a landlord with numerous rental properties. Other than a minor traffic offense, he has no prior criminal history.

The testimony at the sentencing hearing revealed that the defendant has regularly attended church all of his life, publicly sought forgiveness at his church shortly after the incident, and is remorseful. The defendant conceded his wrongdoing in securing the gun from his vehicle and reentering the residence, thereby leading to these tragic consequences.

The testimony also indicated that the deceased victim had two teenage children who were greatly impacted by her death. The testimony further revealed that the surviving victim almost died as a result of his injuries, was hospitalized six weeks, has severe brain damage, has no memory of past events, and requires constant supervision.

The trial court made no specific findings as to enhancement and mitigating factors, sentenced the defendant to the maximum sentence for each offense, and ran the sentences consecutively without mention of a statutory basis for consecutive sentencing.

## STANDARD OF REVIEW

A defendant who challenges his or her sentence has the burden of proving the sentence imposed by the trial court is improper. Tenn. Code Ann. § 40-35-401, Sentencing Commission Comments; State v. Ashby, 823 S.W.2d 166, 169 (Tenn. 1991). It is this court's duty to conduct a *de novo* review of the record with a presumption the trial court's determinations are correct when a defendant appeals the length, range, or manner of service of his or her sentence. Tenn. Code Ann. § 40-35-401(d) (1997). The presumption of correctness is conditioned upon the affirmative showing in the record that the trial court considered the sentencing principles and all relevant facts and circumstances. State v. Pettus, 986 S.W.2d 540, 543-44 (Tenn. 1999).

In order to allow meaningful appellate review,

> the trial court must place on the record its reasons for arriving at the
> final sentencing decision, identify the mitigating and enhancement
> factors found, state the specific facts supporting each enhancement

-3-

> factor found, and articulate how the mitigating and enhancement factors have been evaluated and balanced in determining the sentence.

State v. Poole, 945 S.W.2d 93, 96 (Tenn. 1997).

In this case, the trial court did not identify the mitigating and enhancement factors found, did not state a statutory basis for consecutive sentencing, and did not address alternative sentencing. Accordingly, our review is *de novo* without a presumption of correctness.

## ANALYSIS

### A. Judicial Diversion

Initially, the defendant contends he should have been granted judicial diversion. *See* Tenn. Code Ann. § 40-35-313(a) (1997). However, we note there was no specific request for judicial diversion at the sentencing hearing. *See* State v. David E. Smith, Jr., No. 01C01-9805-CR-00224, 1999 Tenn. Crim. App. LEXIS 573, at *11-12 (Tenn. Crim. App. June 9, 1999, at Nashville) (holding the failure to request judicial diversion does not properly bring the issue before the trial court). Regardless, for reasons hereinafter stated, we do not believe the defendant has earned the largess of judicial diversion.

### B. Length of Sentences

At sentencing, the state contended enhancement factor (3), the offense involved more than one victim, applied. *See* Tenn. Code Ann. § 40-35-114(3) (1997). On appeal, the state concedes this enhancement factor is inapplicable since there were separate convictions for each victim; we agree. *See* State v. Williamson, 919 S.W.2d 69, 82 (Tenn. Crim. App. 1995).

Although the state concedes enhancement factor (6), the personal injuries inflicted upon the victim were particularly great, is inapplicable to both convictions, we disagree as it relates to the conviction for attempted voluntary manslaughter. *See* Tenn. Code Ann. § 40-35-114(6) (1997). Injury is not an element of this offense. The evidence established that the victim of the attempted voluntary manslaughter indeed had particularly great injuries. Accordingly, enhancement factor (6) applies to the conviction for attempted voluntary manslaughter.

Enhancement factor (9), the defendant possessed or employed a firearm during the commission of the offense, applies to both convictions. *See* Tenn. Code Ann. § 40-35-114(9) (1997). The use of a firearm is not an element of either offense. *See* State v. Butler, 900 S.W.2d 305, 312-13 (Tenn. Crim. App. 1994) (holding the use of a firearm is not an element of second degree murder).

Enhancement factor (10), the defendant had no hesitation about committing a crime when the risk to human life was high, presents a closer question. *See* Tenn. Code Ann. § 40-35-114(10) (1997). Although this factor may not be applied as it would relate to each named victim, it is

applicable where persons other than the victim are endangered by the defendant's actions. *See* State v. Imfeld, 70 S.W.3d 698, 707 (Tenn. 2002). The record reflects that the defendant's friend, Tony Crowe, was standing beside the defendant when the shots were fired. Nevertheless, it is questionable whether the record is sufficiently clear for us to conclude that Crowe's life was in danger. Regardless, we reach the same sentencing determination whether this factor is or is not applied.

As to mitigating factors, we decline to give significant weight to mitigating factors (2), the defendant acted under strong provocation; (3), substantial grounds exist tending to excuse or justify the defendant's criminal conduct; and (11), the crime was committed under such unusual circumstances that it is unlikely that a sustained intent to violate the law motivated the criminal conduct. *See* Tenn. Code Ann. § 40-35-113(2), (3), (11) (1997). These factors are largely embodied in the offenses of voluntary manslaughter and attempted voluntary manslaughter, although we recognize there is no prohibition against "double mitigation." State v. Donald Paul Presley, No. E2000-00592-CCA-R3-CD, 2001 Tenn. Crim. App. LEXIS 629, at *23 (Tenn. Crim. App. Aug. 14, 2001, at Knoxville), *perm. to app. denied* (Tenn. 2002). We do give weight to mitigating factor (13), any other factor consistent with the purposes of sentencing, based upon the lack of a prior criminal record, positive social history, positive work history, and remorse. *See* Tenn. Code Ann. § 40-35-113(13) (1997).

The range of punishment for a Range I standard offender for voluntary manslaughter is three to six years and for attempted voluntary manslaughter is two to four years. *See id.* § 40-35-112(a)(3), (4) (1997). We give great weight to enhancement factor (9), the employment of a firearm, for both convictions. Further, we give great weight to enhancement factor (6) for the attempted voluntary manslaughter conviction. We give lesser weight to the applicable mitigating factors. We reduce the voluntary manslaughter sentence to five years and affirm the four-year sentence for attempted voluntary manslaughter.

## C. Consecutive Sentencing

A court may order consecutive sentencing if the trial court finds that the defendant qualifies under one of the criteria set forth in Tennessee Code Annotated section 40-35-115(b). The trial court made no finding relating to any of these criteria. The only possible criterion that could be applicable in this case is the "dangerous offender" criterion. *See* Tenn. Code Ann. § 40-35-115(b)(4) (1997). Even if the defendant is classified as a dangerous offender, the court must also find that consecutive sentences (1) are reasonably related to the severity of the offenses, and (2) serve to protect the public from further criminal conduct by the offender. State v. Wilkerson, 905 S.W.2d 933, 939 (Tenn. 1995). The trial court did not make these findings; neither are we able to conclude that the defendant meets these prerequisites. Accordingly, the sentences must run concurrently.

## D. Probation

Finally, the defendant contends the trial court erred in denying him probation. A defendant is eligible for probation if the sentence received by the defendant is eight years or less, subject to some statutory exclusions. Tenn. Code Ann. § 40-35-303(a) (1997).

An especially mitigated or standard offender convicted of a Class C, D or E felony is presumed to be a favorable candidate for alternative sentencing in the absence of evidence to the contrary. *Id.* § 40-35-102(6) (1997). However, although a defendant may be presumed to be a favorable candidate for alternative sentencing, the defendant has the burden of establishing suitability for total probation. *Id.* § 40-35-303(b) (1997); State v. Boggs, 932 S.W.2d 467, 477 (Tenn. Crim. App. 1996). Even though probation must be automatically considered, "the defendant is not automatically entitled to probation as a matter of law." Tenn. Code Ann. § 40-35-303(b), Sentencing Commission Comments; State v. Hartley, 818 S.W.2d 370, 373 (Tenn. Crim. App. 1991).

Probation may be denied based solely upon the circumstances surrounding the offense. State v. Bingham, 910 S.W.2d 448, 456 (Tenn. Crim. App. 1995). However, the circumstances of the offense as committed must be especially violent, horrifying, shocking, reprehensible, offensive or otherwise of an excessive or exaggerated degree; and the nature of the offense must outweigh all factors favoring probation. Hartley, 818 S.W.2d at 374-75.

We conclude the defendant has not met his burden of establishing suitability for total probation. Furthermore, the state has overcome the presumption favoring alternative sentencing. Under the facts and circumstances relating to these convictions, we conclude alternative sentencing would depreciate the seriousness of the offenses. *See* Tenn. Code Ann. § 40-35-103(1)(B) (1997). In this regard, we must note that it was the defendant's choice to leave the residence, secure his firearm from his vehicle, reenter the residence to confront the victims, and shoot both victims after being warned by his friend, "Don't mess up." There were two victims that suffered from the defendant's criminal acts. The slain female victim had no weapon; was four feet, eleven inches tall; and weighed only eighty-eight pounds. The male victim was shot twice, once in the shoulder and once in the head. Although the male victim survived, he sustained permanent brain damage and requires constant care. The jury rejected the defendant's claim of self-defense. *See id*. § 39-11-611(a) (1997). We conclude the facts surrounding the offenses are sufficiently violent, shocking and reprehensible to justify the denial of alternative sentencing. *See* State v. Fields, 40 S.W.3d 435, 441 (Tenn. 2001).

## CONCLUSION

Based upon our review of the record, we reduce the defendant's sentence to five years for voluntary manslaughter, affirm the four-year sentence for attempted voluntary manslaughter, and order that the sentences run concurrently.

_____
JOE G. RILEY, JUDGE